PERLICK *v.* HOWE'S ESTATE.

ESTATES OF DECEDENTS—CLAIMS — EVIDENCE — GREAT WEIGHT OF
EVIDENCE.

In a claim against the estate of a deceased person, the
verdict for plaintiff, *held,* against the great weight of the
evidence.

Error to Oakland; Gillespie (Glenn C.), J.     Submitted June 6, 1924.     (Docket No. 69.)     Decided
July 24, 1924.

Henry Perlick presented a claim against the estate
of Mary C. Howe, deceased, for services rendered.
The claim was allowed in part by the commissioners,
and plaintiff appealed to the circuit court.     Judgment
for plaintiff.     Defendant brings error.     Reversed.

*Reynolds, Sessions & Pierce,* for appellant.

*Keeling & Bogue,* for appellee.

WIEST, J.     Plaintiff presented a double-barrelled
claim against the estate of Mary C. Howe, deceased;
one barrel aimed to bag the value of her 120-acre
farm and all her movables, under a claimed verbal
agreement that, if he worked her farm on shares after
February, 1917, remained with and cared for her until
her death he should have everything; the other, in
reserve, to the end that if the first failed he should
have pay for services rendered her under the expectation of pay and so understood by her.     The first
aim missed the mark on trial before a jury, but the
second carried so well that the jury gave him $742.38
more than he asked.     Defendant estate moved for a

new trial, which was denied, but plaintiff was required to remit the allowance above his claim.    He remitted.    This gave him every dollar he asked for.

The sole question presented is whether the verdict is against the weight of the evidence.    We think it is and will give our reasons.    The weight to be given the evidence requires the drawing of reasonable inferences and the employment of the reasoning faculties.    Plaintiff's case was mainly made by an account book which he claimed he kept from month to month.    This was admitted in evidence without objection; defendant estate waiving the statutory protection on the theory the exhibit would help more than it would harm.    It did not seem to help the estate.

In the spring of 1916 plaintiff rented Mrs. Howe's farm on shares, and, in February, 1917, he informed her he intended to leave, and at that time, he claims, the agreement was made.    The account book constituted evidence created with the design of being employed in a suit against the estate.    There is nothing wrong in recording from month to month items of service rendered rather than leaving the same to the uncertainty of memory, but, if the averred record in any of its recitals impeaches its own verity and the honesty of its sponsor, the taint permeates the whole thereof and it becomes an object of suspicion, for the rottenness may go deeper than is openly apparent.

Plaintiff claims the items and writing in the book were placed there during the months indicated.    As to one item, and the most important one, he is either mistaken, guilty of falsification, or an ignoramus. Four years before Mrs. Howe died he says he wrote in the book:

228—Mich.—4.

"February—1917.

"AGREEMENT.

"Deceased agreed to make this work right with me before she died, and if I stayed with her on the farm until her death, she stated that no one could compel me to move off the farm."

If this was written at the date indicated he would hardly speak of Mrs. Howe as "deceased" for she was very much alive. This slip in designating Mrs. Howe's status clearly indicates the entry was made after Mrs. Howe's death. This entry makes one suspicious of the whole book. The verdict with reference to another item is ridiculous. In June, 1921, when Mrs. Howe was on her deathbed in Lansing, word reached plaintiff to that effect and he went to Lansing to see her, and charged her $50 for doing so. While the book account says:

"Called to Lansing twice at death of Mrs. Howe (4 days)......$50.00,"

it is apparent that plaintiff visited the deathbed and attended the funeral of Mrs. Howe. Just what services he rendered this dying woman in viewing her dissolution and attending her obsequies is beyond any stretch of the imagination, yet the jury awarded him $50 as a reasonable charge for such exhibition of pity and tribute of respect. He may have intended to charge $50 for visiting the deathbed and attending the funeral of the old woman who, he says, had promised to give him all her worldly possessions, but it can hardly be imagined that she expected to pay him for such attendance. There was no evidence to support this item and the dictates of common decency should have caused its prompt rejection. Cupidity sometimes works at cross purposes with craftiness. In the book following a charge in August, 1921, is a charge headed:

"1920.    September—

"Paid ½ for material for silo..............$250.

"Deceased not willing to have silo put up unless Mr. Perlick paid one-half of cost of same at is (as it) was for his benefit."

This item, unexplained, authorized no recovery for it states on its face that the silo was for the benefit of plaintiff and, therefore, he was to pay half of the cost.    Was this charge for the half of the material to be paid for by Mrs. Howe, or for the half of the material paid for by plaintiff under an agreement that he was to do so as the silo was for his benefit?    The whole thing was left to guess.    No credits were given the estate by plaintiff or allowed by the jury.

Plaintiff charged Mrs. Howe $1,373 for acting as chauffeur in driving her to Holly and other towns.

"Mrs. Howe bought a Ford automobile in 1915. She was going to run it but she run over a person in Holly and wouldn't run it any more and told Henry he could take the car and it would be his and he could pay for it.    Henry used the car afterwards."

The charges made were for driving the car and not for use thereof.    Does plaintiff owe for this car?    If so, how much?    The record fails to throw any light on the subject and the jury, in the absence of all evidence, could not credit the estate with the value of the car.    Plaintiff lived in the home with Mrs. Howe and charged her $25 a month during the time fires were kept, for care of a coal stove and later a furnace when it was put in.    The evidence indicates an agreement between plaintiff and Mrs. Howe under which he was to work the farm on shares, furnish half of the groceries and live in the home, but does not disclose the full terms thereof.    In the absence of an agreement to pay for keeping a fire, at which he toasted his own shins, in the home where he lived under some kind of an agreement, it will not be im-

plied that Mrs. Howe expected to be charged therewith, or that such work was of a nature to raise an implied promise to pay therefor.   Under the evidence the charge of $25 a month for 26 months for putting coal in the stove and furnace and carrying out the ashes ought not to have been allowed.

The judgment is reversed and a new trial granted, with costs to the estate.

CLARK, C. J., and MCDONALD, BIRD, SHARPE, MOORE, STEERE, and FELLOWS, JJ., concurred.